AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

FILED
UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO

# UNITED STATES DISTRICT COURT
### for the
### District of New Mexico

JAN 14 2026

MITCHELL R. ELFERS
CLERK OF COURT

| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) Case No. 26-93 MR |
| Luis Angel Ruiz | ) |
| 2135 Payne Street #215 Las Cruces, NM 88001 | ) |
| | ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, attached hereto and incorporated herein

located in the _____ District of _____ New Mexico _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached and fully incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
| --- | --- |
| 18 USC 1962(c) | Racketeer Influenced and Corrupt Organizations Act |
| 18 USC 1962(d) | Conspiracy to Violate Racketeer Influenced and Corrupt Organizations Act |
| 18 USC 922(q)(3)(a) | Discharging Firearm in a School Zone (Other offenses described in Attachment C) |

The application is based on these facts:
See Attachment C, which is attached and fully incorporated herein.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Benjamin Berling - FBI Task Force Officer
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_telephonically sworn and electronically submitted_ *(specify reliable electronic means).*

Date: 14 Jan 2026

City and state: Las Cruces, New Mexico

_____
*Judge's signature*

Damian L. Martinez - United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### Description of Locations and People to be Searched:

1. The Subject Premises to be searched is the entire residence located 2135 Payne Street #215 Las Cruces, NM 88001. The residence is second-story apartment located at the Centre Square Apartments. The Subject Premises has the numbers "215" in bright numbers attached to the wall to the left of the front door. There is an "Alice in Wonderland" keyhole decoration on the front door. This search warrant includes with it the authority to search any and all vehicles reasonably believed to be associated with the residence, as well as any and all structures or outbuildings contained within the curtilage of the property. The person to be searched is Luis Angel Ruiz. Please see the below photographs for details.

 

*(Photograph of the Subject Premises, 2135 Payne Street #215 Las Cruces, NM 88001)*

The search of each Subject Premises shall include the entire residences and all outbuildings, trash cans, and storage containers designated for use by the Subject Premises. The search shall also include vehicles parked at, or in front of, the Subject Premises provided such vehicle has an apparent connection to the Subject Premises. Connection to the Subject Premises may be established by way

of prior law enforcement observation, vehicle registration, subject admission or possession of an ignition key.



*(Photograph of Luis Angel Ruiz, above)*

**ATTACHMENT B**

**Items to be Seized:**

All evidence, fruits, and instrumentalities of violations 18 U.S.C. §1962(c) and (d) (Racketeer

Influenced and Corrupt Organizations Act and conspiracy to do the same), 18 U.S.C. § 922

(q)(3)(a) Discharging a Firearm in a School Zone and 18 U.S.C. § 922(k) Possession of a Firearm

with a Removed, Obliterated, or Altered Serial Number; including the following items:

1.  Evidence of membership or affiliation with the "OTB" street gang; to include any documents,

photographs, drawings, writings, or objects depicting gang members names, initials, logos,

monikers, slogans, or any item depicting potential gang membership, affiliation, activity or

identity; "green light"/disciplinary list, murder/assault list, witness or confidential informant

lists, inmate lists, address/telephone number list, letters, law enforcement reports, jail or

Department of Corrections reports, judgements, pre-sentencing reports, newspaper articles,

computer generated reports/printouts, legal documents, detention facility inmate number lists or

addresses for inmates or detention facilities;

2. Any cellular telephones, digital tablets, personal digital assistant (PDA) devices or other

communication devices and any and all information stored on such communication devices,

including:

a. Phone numbers, names, usernames, email addresses, residential addresses, and other

identifying information of customers, distributors, sources of supply, and other associates of the

user of the communication devices;

b. Audio and video calls made to or from the communication devices, along with the duration

and date and time each such communication occurred;

c. Any message logs or messages, whether sent from, to, or drafted on the communication devices, along with the date and time each such communication occurred;

d. The content of voice mail messages and audio and video messages stored on the communication devices, along with the date and time each such communication occurred;

e. Photographs or video recordings;

f. Information relating to the schedule, whereabouts, or travel of the user of the communication devices;

g. Information relating to other methods of communications, including the contents of those communications, utilized by the user of the communication devices and stored on the communication devices;

h. Bank records, checks, credit card bills, account information and other financial records; and

i. Evidence of user attribution showing who used or owned the communication devices, such as social media accounts, email addresses, messages, location information, photographs and videos, phonebooks, saved usernames and passwords, documents, and internet browsing history;

3. Papers, tickets, notes, schedules, receipts including bill of sales for vehicles, registration and licensing of vehicles, license plates, vehicle titles, registration, documents, stickers, and other proof of ownership and tax compliance, driver's license, or proof of insurance and liability;

4. Financial documents, including but not limited to, credit card statements, tax returns, safe deposit records, safe deposit keys, bank records, bank statements, money orders, Western Union receipts, checking account records, cashier's checks, passbooks and other items evidencing the obtainment, concealment and/or expenditure of money or assets;

5. Identification and personal records including address books, telephone directories, calendars, diaries, social security cards, lists of names, social security numbers and other personal identification, telephone and address books or papers of co-conspirators;

6. Photographs, video recordings, slides, digital files, DVDs, CD-Rs, or other media containing images or video of co-conspirators and their illegal activities;

7. Proceeds of an unlawful activity, including but not limited to, United States currency, jewelry, vehicles and other assets or financial records related thereto;

8. Documents, books and papers reflecting names, addresses and/or telephone numbers and lists pertaining to co-conspirators;

9. United States currency, currency counting machines, precious metals, jewelry, financial instruments including stocks and bonds, and all other items of value, and all sales receipts for items of value, that evidence the proceeds illegal racketeering activities.

10. Controlled substances, drug paraphernalia, and packaging materials, including scales, plastic baggies, vacuum sealing machines, and tape;

11. Firearms and ammunition as defined by Title 18 USC Section 921;

12. Firearms accessories including, but not limited to: magazines, optics, scopes, tools, cleaning equipment, trigger assemblies, holsters, grip modules, sights, and any other items that would lead investigators to reasonably believe it is associated with firearms.

13. Valid or false identification documents, including drivers' licenses, social security cards, state identification cards and foreign identification documents;

14. Bills, notes, contracts, or other documents reflecting the ownership, subscription information or use or control of one or more telephones or the location to be searched;

15. Safes, lock boxes, or other locked containers, in which the items in paragraphs 1 through 14 could be concealed.

16. Two (2) buccal swabs for DNA from Luis Angel Ruiz.


The search of the target cell phone(s) or other digital devices will include any installed or accompanying SIM card(s), internal memory, or storage media. The search of said cellular telephone may include the examination of installed software; that is, digital information that can be interpreted by a computer and any of its related components, which may be stored in electronic, magnetic, optical, or other digital form. The search includes the examination of stored materials, media, documents, and data, including but not limited to: address books; recently called numbers; recently received numbers; digital images; and text messages. The search may also include the examination and/or utilization of any manuals and documentation which may be written, recorded, printed, and/or electronically stored material which explains or illustrates how to configure or use the cellular telephone or other related items. The search may also include other areas of the cellular telephone in which said suspected party may store data evidence which is the object of the search requested herein. Furthermore, said items can be analyzed by a trained evidence recovery specialist in order to retrieve, restore, and/or reproduce any or all information believed to be evidence of said offense(s).

This warrant will authorize the Affiant and/or a trained forensic analyst to download any data located on the cell phone, including but not limited to: text messages, call logs, third-party application data, location-based information (GPS history), pictures, videos, web browser histories, contact lists, voicemail messages, voice recordings, social media applications accounts, emails, and any other data or information located within or accessible by the above-mentioned cell phone which may further the Affiant's investigation. This warrant shall authorize the complete search of the above listed device, to include but not limited to, the copying and viewing, of said and/or devices, to be searched. It may be necessary to seize said media and/or device(s), whole or in part, for subsequent analysis. This search of the devices may include physically manipulating the device to search the document the contents. This warrant shall authorize the Affiant or his designee to connect any devices seized pursuant to this warrant to the internet in order to properly view and document data stored on applications, including but not limited to: social media applications, GPS location history, financial history, photographs, videos, messaging applications, etc.

The Affiant asks for the issuance of this search warrant to allow for the seizure, examination, search and digital recording of the data contained within the described social media accounts located on the above listed device. Affiant asks the issuance of this search warrant to allow for law enforcement to connect the above listed device to the internet and once the device is connected to the internet to allow for the examination and seizure of any and all data and also allow for the access of any URL website links found within conversations on social media accounts on the above listed device. This search shall include both physical manipulation and inspection of the device

and it's digital contents as well as the forensic download of all data on the device by a trained forensic analyst.

1. The warrant I am applying for would permit law enforcement to obtain from certain individuals the display of physical biometric characteristics (such as fingerprint, thumbprint, or facial characteristics) in order to unlock devices subject to search and seizure pursuant to this warrant. I seek this authority based on the following:

   a. I know from my training and experience, as well as from information found in publicly available materials published by device manufacturers, that many electronic devices, particularly newer mobile devices and laptops, offer their users the ability to unlock the device through biometric features in lieu of a numeric or alphanumeric passcode or password. These biometric features include fingerprint scanners and facial recognition features. Some devices offer a combination of these biometric features, and the user of such devices can select which features they would like to utilize.

   b. If a device is equipped with a fingerprint scanner, a user may enable the ability to unlock the device through his or her fingerprints. For example, Apple offers a feature called "Touch ID," which allows a user to register up to five fingerprints that can unlock a device. Once a fingerprint is registered, a user can unlock the device by pressing the relevant finger to the device's Touch ID sensor, which is found in the round button (often referred to as the "home" button) located at the bottom center of the front of the device. The fingerprint sensors found on devices produced by other manufacturers have different names but operate similarly to Touch ID.

c.  If a device is equipped with a facial recognition feature, a user may enable the ability to unlock the device through his or her face. For example, Apple offers a facial recognition feature called "Face ID." During the Face ID registration process, the user holds the device in front of his or her face. The device's camera then analyzes, and records data based on the user's facial characteristics. The device can then be unlocked if the camera detects a face with characteristics that match those of the registered face. Facial recognition features found on devices produced by other manufacturers have different names but operate similarly to Face ID.

## ATTACHMENT C

## AFFIDAVIT IN SUPPORT OF ORDER AUTHORIZING SEARCH WARRANT

I, Benjamin Berling, being first duly sworn, hereby depose and state as follows:

1. This Affidavit is submitted in support of an order authorizing the entry into the Subject Premises, as more fully described below and in Attachment A to the Search Warrant Application, for the purposes of searching and seizing evidence of violations 18 U.S.C. §1962(c) and (d) (Racketeer Influenced and Corrupt Organizations Act and conspiracy to do the same), 18 U.S.C. § 922 (q)(3)(a) Discharging a Firearm in a School Zone and 18 U.S.C. § 922(k) Possession of a Firearm with a Removed, Obliterated, or Altered Serial Number.

## INTRODUCTION

2. I am a Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI) currently assigned to the Safe Streets Gang Task Force (SSGTF). I have been an FBI TFO since December 2023. As such, I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and am empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I have also been employed as a full-time, salaried police officer with the Las Cruces Police Department since February 2015. In those capacities, I conduct investigations of criminal organizations, violent repeat offenders, and other federal drug and firearm related crimes.

3. My experience as a TFO and as a police officer includes, but is not limited to: conducting physical surveillance, interviewing witnesses, writing affidavits for and executing search warrants, and working with undercover agents and informants.

## PURPOSE OF THE AFFIDAVIT

4. The FBI SSGTF and the Las Cruces Police Department (LCPD) Street Crimes Unit (SCU) have

been engaged in the investigation of the gang known as "Only the Brothers" (OTB) and its members since late 2025. Over the course of the investigation, case agents have become aware of "OTB" gang members and associates engaged in violent crime (to include aggravated assault with a deadly weapon, aggravated battery resulting in great bodily harm, drive by shootings, and robbery), trafficking of firearms, and the illegal possession of firearms including machine guns and stolen firearms. Based on the evidence obtained thus far in the ongoing investigation, and as described herein, I believe there is probable cause to believe that Luis Angel Ruiz aka "Lotti", Elijah Malachi Sambrano aka "Flako", Abel Santo Raygoza-Ruiz aka "Adot", Ezekial Benavidez aka "ZStacks", Saul Ricardo Benavidez Jr, and De'Marques Desean Washington aka "DRackz" and others known and unknown are suspected of participating in an ongoing conspiracy which violates the Racketeer Influenced and Corrupt Organizations (RICO) Act in furtherance of OTB's objectives and purposes.

5.  Based on the facts and information contained herein, I believe the Subject Premises located at **2135 Payne St. Apartment #215, Las Cruces, NM 88001** associated with **Luis Angel Ruiz** aka **"Lotti"** and the person of **Luis Angel Ruiz** (described in greater detail in Attachment A, which has been attached hereto and incorporated herein) contain evidence, fruits, and instrumentalities of violations 18 U.S.C. §1962(c) and (d) (Racketeer Influenced and Corrupt Organizations Act and conspiracy to do the same), 18 U.S.C. § 922 (q)(3)(a) Discharging a Firearm in a School Zone and 18 U.S.C. § 922(k) Possession of a Firearm with a Removed, Obliterated, or Altered Serial Number. Hereinafter I will refer to the aforementioned violations at the "Target Offenses."

6.  The particular evidence, fruits, and instrumentalities to be seized by law enforcement are set forth in Attachment B, which has been attached hereto and incorporated herein by this reference.

7.  This affidavit also seeks the Court's permission to allow the FBI agents and Task Force Officers

(TFOs) executing the search warrants to search the body of the target subject for tattoos evidencing membership in or association with a gang and to photograph those tattoos. I believe such tattoos demonstrate membership in a criminal enterprise and may constitute a conspiratorial overt act. I am aware that such photographic evidence has been utilized in other gang Racketeering Criminal Organization (RICO) jury trials involving the FBI previously.

8. I am submitting this affidavit based upon my experience and familiarity with the investigation of the "OTB" street gang and their associates. This affidavit does not set forth all my knowledge or summarize all the investigative efforts in the overall investigation; rather, this affidavit sets forth facts that support probable cause to search the requested location and persons, as well as relevant background information. During my investigation, I have developed information I believe to be reliable from the following sources:

    a.  Information from detectives from the LCPD Criminal Investigative Division;

    b.  Information from officers of the LCPD Street Crimes Unit;

    c.  Results of physical and electronic surveillance;

    d.  Information provided by confidential sources;

    e.  Information provided by cooperating defendants and other subject/witness interviews;

    f.  Information derived from lawfully intercepted wire communications, to include telephone text, email, and video; and

    g.  Records from the FBI National Crime Information Center (NCIC), U.S. District Courts, New Mexico Courts, and the New Mexico Motor Vehicle Division.

9. Where I refer to conversations herein, they are related in substance and, in part, based on conversations between fellow agents, TFOs, other law enforcement personnel, or confidential sources that assisted law enforcement. Any observations referenced herein that I did not

personally witness were relayed to me in oral and/or written reports of agents of the FBI or other agencies. All figures, times, and calculations set forth herein are approximate.

## BACKGROUND ALLEGATIONS REGARDING GANGS AND CRIMINAL ORGANIZATIONS

10. Based upon my training, experience, and participation in the OTB investigation, as well as the investigation of other gang/criminal enterprises and drug trafficking organizations (DTOs), I am aware that individuals engaged in the type of criminal conduct constituting the Target Offenses maintain documents, letters, and records relating to their illegal activities for long periods of time. This documentary evidence is usually secreted in their place of residence, or the residences of family members, friends, or associates, in their business locations, or in stash houses. This documentary evidence includes: telephone numbers, address books, travel receipts, notes referencing aliases or coded names, false identification, money order receipts, money orders, money remittance receipts, pre-paid money cards such as MoneyPak, Walmart, Green Dot, or other debit cards, bulk U.S. currency, money collection logs such as "tally" sheets, drug load sheets, shipping/mailing receipts, detention facility inmate number lists or addresses for inmates or detention facilities.

11. Individuals engaged in the type of criminal conduct constituting the Target Offenses maintain regular contact with one another. This contact does not terminate once an individual is incarcerated. Members of gang/criminal enterprises routinely send and receive communications from other members of the organization in which they discuss ongoing criminal activities and request various forms of assistance, to include financial help and/or witness intimidation or elimination. Incarcerated members of gang/criminal enterprises communicate via telephone calls, some of

which are generated via third parties. In addition, incarcerated members often keep photographs of themselves and other members of the gang/criminal enterprise in order to impress or intimidate others.

12. I am aware members of gangs aggressively pursue informants, suspected informants, and persons who betray the gang. It has been my experience gang members relay such information to one another through covert communications, messages, social media, emails, telephone calls, personal visits, letters, and mail.

13. I know that members and associates of gang/criminal enterprises and DTOs have access to numerous cellular phones, often at the same time, in an effort to avoid law enforcement monitoring. I have observed gang members, who are involved in drug trafficking, firearms trafficking, and other illegal activities, routinely use pre-paid phones requiring no subscriber information, or fictitious subscriber names, to advance their unlawful activities. These cellular telephones often contain names and phone numbers of other co-conspirators, text messages utilized to further their illicit activities, photographs and videos of gang members, controlled substances, drug proceeds, or firearms. Members of gang/criminal enterprises and DTOs often mask their ownership of vehicles, real property, and utility services by putting assets in the names of others in an effort to avoid detection by law enforcement.

14. In addition, I am also familiar with the use of text messaging, instant messaging, social media and other messaging applications (i.e. Facebook, Instagram, Telegram, Snapchat, WhatsApp), used by gang/criminal enterprises and DTOs to advance their unlawful activities.

15. I have learned individuals involved in the trafficking of firearms often conceal evidence of their firearms trafficking activities in their residences and businesses, or the residences of friends and relatives, and in surrounding areas to which they have ready access, such as garages, carports,

and outbuildings. They also conceal evidence in vehicles, including vehicles outside of their residences, so that they have ready access to it and so that they can hide it from law enforcement officers executing search warrants at their residence or businesses.

16. I have learned individuals involved in gang/criminal enterprises and DTOs possess items of identification, including but not limited to driver's licenses, rent receipts, bills, and address books. These items may be relevant to the identity of those involved in the criminal enterprise, the possessor of the items seized, and occupants of the premises searched.

17. I am aware that gang members use, possess, and conceal firearms to include rifles, shotguns, and handguns. These weapons are used and possessed by members and associates of a gang to commit murders, attempted murders, assaults, robberies, kidnappings, to protect illicit drug supplies and drug proceeds, to avoid arrest or escape from custody, to intimidate rivals, victims, witnesses, and persons who have betrayed the gang, to impose discipline within the gang, and for other violent crimes. I believe that gang members and associates are expected to possess and maintain weapons and firearms. I am aware members of gangs and other criminal enterprises possess firearms to protect their assets (drugs, drug proceeds, firearms, etc.).

18. It has been my experience the items described above are often stored by members of gang/criminal enterprises and DTOs on their person, in their businesses, residences, garages, outbuildings and yards, the residences of friends and/or relatives, and in vehicles.

### THE "OTB" CRIMINAL ENTERPRISE

19. I believe the OTB gang, including its leadership, membership, prospects, and associates constitute an enterprise as defined in 18 U.S.C. § 1959(b)(2), that is, a group of individuals associated in fact that engage in, and the activities of which, affect interstate commerce. I also believe the enterprise

constitutes an ongoing organization whose members and associates function as a continuing unit for a common purpose of achieving the objectives of the enterprise.

20. I am aware members and associates of the OTB street gang commit, conspire, attempt, and threaten to commit acts of violence to protect and expand the enterprise's criminal operations and reputation. Historically, OTB members and associates have generated income by trafficking firearms and firearm parts (to include machine guns) and participating in robberies and burglaries. To maintain the OTB criminal enterprise members of the gang may:

    a. Discuss firearms acquisition, distribution, and customers

    b. Discuss encounters with law enforcement

    c. Utilize police scanner equipment to monitor law enforcement activities and radio communications

    d. Discuss the presence of suspected law enforcement agents or vehicles

    e. Discuss the identities of individuals suspected of cooperating with law enforcement and the proposed actions to be taken against them; and

    f. Possess weapons and firearms, and discuss ways to conceal these crimes

21. With regard to the possession and concealment of weapons and firearms, I am aware members of the OTB street gang use, possess, and conceal firearms. These firearms are used and possessed by members of the gang to commit aggravated assaults; aggravated batteries; robberies; to conduct drive by shootings; to avoid arrest or escape from custody; to intimidate rivals, victims, witnesses; and for other criminal activity.

## HISTORY OF "OTB"

22. The precise origin of the OTB street gang is currently unknown. However, there has been documentation of the gang's name and certain associates claiming membership of OTB since at

least 2023 in the Dona Ana County Detention Center. A threat assessment report created by the Dona Ana County Detention Center's Security Threat Intelligence Unit (STIU) documents at least one suspected member of OTB via self-admission and a tattoo on their body. The report documents additional suspected members of OTB based on social media postings and similar tattoos.

 

*(Inmate photo of an "OTB" tattoo (left) and a social media photo of an "OTB" tattoo (right)).*

  



*(Various social media accounts and posts depicting "OTB", signified with a red "O").*



*(Screenshot of a social media post created in the fall of 2024).*

23. I have reviewed numerous social media accounts associated with suspected members and
associates of "OTB", including both open-source material as well as content received pursuant to
search warrants (private messages, photos, videos, etc.). I have observed numerous conversations
by these suspected members and associates discussing, conspiring to commit, and bragging about
previous criminal activity that has included firearms trafficking, drive by shootings, discharging
firearms in school zones, aggravated batteries, and aggravated fleeing from law enforcement
officers. While there are not specific conversations overtly stating that they are committing these

crimes in furtherance of the gang, many of these conversations include at least two or more suspected members or associates of "OTB".

24. I am aware that a suspected member of "OTB" named Elijah Sambrano aka "Flako" has been recently charged for his involvement in a conspiracy to commit an armed robbery that resulted in the death of a 19-year old female in Las Cruces. Sambrano is alleged to have non-fatally shot another victim with a handgun during this incident.

25. I am aware that a suspected member of "OTB" named Abel Raygoza-Ruiz has been recently charged with shooting at or from a motor vehicle.

26. I am aware that a suspected member of "OTB" named Luis Angel Ruiz is being actively investigated for his involvement in an incident of discharging a firearm in a school zone in Las Cruces. Ruiz was also recently arrested in possession of numerous firearms, including one with an obliterated serial number.

27. I believe the "OTB" street gang strives to have a reputation for being strong and powerful and must maintain its membership to continue functioning as an organization on the streets. If "OTB" members and associates are perceived as being weak, then rival gangs or individuals could challenge and assault its members and take their assets. This could cause "OTB" to lose members and those that associate with "OTB" and eventually lose influence and dissolve. If "OTB" maintains a large membership and a reputation for being dominant, rival gangs and individuals may think twice before they challenge "OTB" members and associates. Similarly, victims and witnesses may think twice about assisting authorities with any prosecution attempt against the gang and its members. FBI and LCPD case agents have encountered potential victims and witnesses who were too afraid to speak with law enforcement and much less willing to testify against "OTB" members and associates.

**PROBABLE CAUSE**

28. This Affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Facts presented in this Affidavit are based on my knowledge, observations, and direct participation in this investigation, as well as through conversations with other agents and/or persons involved in the investigation, and through the review of reports, and other documentation generated by myself and others during the course of this investigation and other related investigations.

29. The following information is presented as probable cause to search the Subject Premises. Because this Affidavit is being submitted for the limited purpose of establishing probable cause, I have not included each and every known fact regarding the instant investigation. More specifically, I have set forth only pertinent facts that I believe are necessary to establish probable cause to search the Subject Premises for evidence of violations of 18 U.S.C. §1962(c) and (d) (Racketeer Influenced and Corrupt Organizations Act and conspiracy to do the same), 18 U.S.C. § 922 (q)(3)(a) Discharging a Firearm in a School Zone and 18 U.S.C. § 922(k) Possession of a Firearm with a Removed, Obliterated, or Altered Serial Number.

30. On or about September 6th, 2025 Luis angel Ruiz is alleged to have been involved in an incident at Young Park in Las Cruces, NM wherein he is believed to have discharged an AR-15 pistol multiple times. This location is within 1000 feet of Lynn Middle School, and is considered to be a "school zone" for the purposes of 18 U.S.C. § 922 (q)(3)(a) Discharging a Firearm in a School Zone.

31. The AR-15 pistol was recovered that evening in possession of an associate of Luis Angel Ruiz. The spent shell casings at the crime scene were forensically compared utilizing the National

Integrated Ballistics Information Network (NIBIN) and show a presumptive match to the AR-15 pistol.

32. Further investigation into that incident showed that Luis Angel Ruiz was the owner of the AR-15 pistol, and that he admitted to discharging a firearm at Young Park on September 6th, 2025.



*(Excerpts from a group conversation on or about September 7th, 2025 on Instagram, retrieved from a forensic download of a cell phone a suspect arrested after the Young Park shooting.)*

33. In furtherance of that investigation, a search warrant for the content of Luis Angel Ruiz's Instagram account was conducted. In reviewing the content of the Instagram account, I observed that the home page has "OTB" tagged with a big red "O", in the same way other suspected members and associates of the "OTB" street gang commonly use.



*(A screenshot of the homepage of Luis Angel Ruiz's Instagram account showing his association with the "OTB" street gang).*

34. I also observed multiple photographs of Luis Angel Ruiz in possession of the same AR-15 pistol seized after the Young Park shooting on September 6th, 2025.



*(Luis Angel Ruiz posing with the AR-15 pistol (left two), the AR-15 pistol recovered on September 6th, 2025 after the Young Park Shooting).*

35. On or about September 24th, 2025 Luis Angel Ruiz was arrested by the Las Cruces Police Department for DWI, and was found to be in possession of 4 handguns, including one with an obliterated serial number.

 

*(Photographs of the firearm with an obliterated serial number possessed by Luis Angel Ruiz on September 24th, 2025).*

36. In reviewing the content of Luis Angel Ruiz's Instagram account, I observed multiple conversations of him attempting to sell the above firearm with the obliterated serial number, in addition to at least one other firearm. I also observed him discussing buying and/or trading for other firearms with other associates of his.

37. I also observed multiple conversations of Luis Angel Ruiz discussing the "OTB" street gang, making comments about that the acronym stands for "Only the Brothers", that he can allow people into the group, and that the group has firearms and narcotics. I also observed him antagonizing rival gang members using the term "OTB" in posts about fights and stealing firearms.

38. I also observed a conversation wherein Luis Angel Ruiz asks an associate for the address of a victim/witness in a case against a relative of his, who is charged with Aggravated Battery (Deadly Weapon), Robbery, and Conspiracy to Commit Robbery. Based on my knowledge and experience in conducting gang-related investigations, I believe that it is likely that Luis Angel

Ruiz is asking for that victim's address because he intends to intimidate or retaliate against that person for cooperating with law enforcement.

39. On or about December 21st, 2025 I became aware of a post to Luis Angel Ruiz's Instagram account showing him posing with a tan in color Canik handgun.



*(A screenshot of a photo of Luis Angel Ruiz posing with a tan Canik handgun posted to his Instagram account on or about December 21st, 2025).*

40. I have continued to monitor Luis Angel Ruiz's Instagram account and have continued to observe him in possession of firearms and posting gang-related photos, typically antagonizing and attempting to intimidate rival gangs.

41. On or about January 10th, 2026 there was a report of a drive by shooting near the address of 790 Shannon in Las Cruces, New Mexico. The suspect vehicle for this incident was a grey sedan.

42. On or about January 11th, 2026 there was a drive by shooting near the address of 1158 Parker Road in Las Cruces, New Mexico. The suspect vehicle was identified as possibly a Ford Focus with no license plate.

43. Also on January 11th, 2026 there was another drive by shooting at the address of 5720 E. Mesa in Las Cruces, New Mexico. This residence belongs to a known member of another local street gang known as "700". I know there is a rivalry between "700" and "OTB" because of a homicide that occurred in September of 2025.

44. On or about January 10th, 2026 and January 11th, 2026 Luis Angel Ruiz posted multiple photographs of him in possession of firearms, as well as apparently taunting the "700" gang shortly after the shooting occurred.

  

*(Screenshots of posts made to Luis Angel Ruiz's Instagram account on or about January 10th, 2026 (left and center) and on or about January 11th, 2026 (right)).*

45. I believe the photograph above with the caption "700sharks swimming for cover" is a reference to that drive-by shooting and implies that Luis Angel Ruiz had some involvement in this shooting. I believe it is likely that a firearm seized pursuant to this search warrant at Luis Angel Ruiz's residence will show a ballistic match to the shooting of the rival gang member's residence.

46. On or about January 12th, 2026 I learned that another officer with the Las Cruces Police Department observed Luis Angel Ruiz operating a grey Ford Focus with no license plate, leaving the Subject Premises of 2135 Payne Street #215.

47. On or about January 13th, 2026 I personally observed Luis Angel Ruiz operating that same grey Ford Focus, which now was bearing a fictitious license plate that belonged to a different vehicle.

 

*(A photograph of the suspect vehicle captured on surveillance near the drive by shooting at 1158 Parker in Las Cruces, NM on January 10th, 2026 (left). A photograph of the vehicle Luis Angel Ruiz was observed operating on January 12th and 13th, 2026 (right)).*

48. On or about January 13th, 2026 physical surveillance was conducted on Luis Angel Ruiz and he was observed entering apartment 215 at 2135 Payne Street Las Cruces, New Mexico 88001.

49. I have conducted numerous investigations into street gang activity in the Las Cruces area. These investigations have included interviews with suspects, confidential informants, and cooperating

defendants, physical and electronic surveillance, and monitoring of in-jail communications. Based on this experience in conducting these investigations, I know that members of criminal street gangs will often retain their firearms for extended periods of time. Though they often sell and trade firearms amongst their peers and associates, they are extremely reluctant to go any period of time without possessing *any* firearms because they want it for protection against rival gang members and to intimidate their enemies and that they often possess these firearms in furtherance of their criminal gang activities.

50. Based on my experience in conducting investigations into criminal organizations such as street gangs and drug trafficking organizations (DTOs), I believe that the items described in Attachement B to be seized are likely to be located at the primary residence of Luis Angel Ruiz, inside of any vehicles associated to him, or on his person. This has been the case in nearly every search warrant related to this type of criminal investigation that I have been involved in. I believe this is because people involved in gang activity typically keep their firearms close to them for their own protection or to easily intimidate their enemies; they keep the products they are selling (i.e. narcotics or additional firearms) close to them so that they are safe from theft from others; they keep their cellular devices close to them as an easy and convenient means to communicate with others; and I believe it is reasonable to believe other items listed in Attachment B, such as ledgers and gang paraphernalia, are likely to be located at the primary residence of Luis Angel Ruiz because gang members and associates frequently decorate their home with various types of gang paraphernalia (flags, jerseys, graffiti, etc). Any ledgers of sales that are not kept electronically on their phone are likely to be conveniently placed or hidden within their residence for easy access when needed for reference.

51. Physical surveillance, electronic surveillance, and information listed in police databases shows that the Subject Premises described in this affidavit and in Attachment A is the primary residence of Luis Angel Ruiz.

52. I believe that there is probable cause to believe that all of the above-described photographs, videos, and conversations will also be on Luis Angel Ruiz's cell phone, and that the content of that cell phone will provide further evidence of Elijah Sambrano's involvement in the Target Offenses. This evidence includes, but is not limited to: other photographs, videos, text messages, voice messages, social media content, and historical GPS location history. I believe that it is extremely likely that the Instagram content described above (photos, videos, and messages) exists on Luis Angel Ruiz's cell phone, and the device may provide additional information about those items, such as when the files were created, whether the file was created by the device or sent by another, and the geo-location of the device at the time the files were created.

53. I believe it is necessary to collect a DNA sample from Luis Angel Ruiz, as described in Attachment B, because it will help to further corroborate his possession of any of the other evidence seized during this investigation.

54. On or about January 13th, 2026 a federal arrest warrant was issued for Luis Angel Ruiz for the crimes of 18 U.S.C. § 922 (q)(3)(a) Discharging a Firearm in a School Zone and 18 U.S.C. § 922(k) Possession of a Firearm with a Removed, Obliterated, or Altered Serial Number. The issuance of this search warrant will assist in the safe apprehension of Luis Angel Ruiz in furtherance of these ongoing investigations.

## NIGHTTIME AUTHORIZATION FOR EXECUTION OF SEARCH WARRANT

55. Based on the presumed presence of numerous firearms at the subject premises, and the established history of Luis Angel Ruiz battering police officers, I am specifically requesting

authorization to execute this search warrant at any time, in the day or night. The initiation of this warrant under the cover of darkness will allow the officers and agents to more safely move in to positions to announce their presence and intent of executing the search warrant, and it will greatly reduce the risk of their approach being compromised and endangering the integrity of any evidence inside of the residence or allowing the subjects inside an opportunity to arm themselves or barricade the subject premises. Additionally, this search warrant will be executed sequentially with numerous other search warrants involving members and associates of the "OTB" street gang. The limited resources available to conduct this operation means that subsequent search warrants will be later in the day, with more daylight available to compromise the officers' safety and the integrity of the investigations. The execution of this search warrant outside of the hours of 06:00 a.m. to 10:00 p.m. will greatly reduce the risk of danger to the officers, the integrity of the evidence at the subject premises, and effectiveness of the overall operation involving multiple sequential search warrants.

## SUBJECT PREMISES

56. The Subject Premises to be searched is the entire residence located at 2135 Payne Street Apartment #215 Las Cruces, NM 88001. This search warrant shall include the full search of any and all vehicles associated with the residence. Please refer to Attachment A for photographs and further details.

## ELECTRONIC STORAGE & FORENSIC ANALYSIS

57. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. This information can sometimes be recovered with forensics tools.

58. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how any seized cellular telephone or other electronic device was used, the purpose of its use, who used the Device, and when. There is probable cause to believe that this forensic electronic evidence might be on the devices because:

    a.   Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    b.   A person with appropriate familiarity with how an electronic device works and the data generated by such devices may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    c.   The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a device is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    d.   Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

59. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

60. The warrant I am applying for would permit law enforcement to obtain from certain individuals the display of physical biometric characteristics (such as fingerprint, thumbprint, or facial characteristics) in order to unlock devices subject to search and seizure pursuant to this warrant. I seek this authority based on the following:

    a. I know from my training and experience, as well as from information found in publicly available materials published by device manufacturers, that many electronic devices, particularly newer mobile devices and laptops, offer their users the ability to unlock the device through biometric features in lieu of a numeric or alphanumeric passcode or password. These biometric features include fingerprint scanners and facial recognition features. Some devices offer a combination of these biometric features, and the user of such devices can select which features they would like to utilize.

    b. If a device is equipped with a fingerprint scanner, a user may enable the ability to unlock the device through his or her fingerprints. For example, Apple offers a feature called "Touch ID," which allows a user to register up to five fingerprints that can unlock a device. Once a fingerprint is registered, a user can unlock the device by pressing the relevant finger to the device's Touch ID sensor, which is found in the round button (often referred to as the "home" button) located at the bottom center of the front of the device.

The fingerprint sensors found on devices produced by other manufacturers have different names but operate similarly to Touch ID.

c.   If a device is equipped with a facial recognition feature, a user may enable the ability to unlock the device through his or her face. For example, Apple offers a facial recognition feature called "Face ID." During the Face ID registration process, the user holds the device in front of his or her face. The device's camera then analyzes, and records data based on the user's facial characteristics. The device can then be unlocked if the camera detects a face with characteristics that match those of the registered face. Facial recognition features found on devices produced by other manufacturers have different names but operate similarly to Face ID.

d.   In my training and experience, users of electronic devices often enable the aforementioned biometric features because they are considered to be a more convenient way to unlock a device than by entering a numeric or alphanumeric passcode or password. Moreover in some instances, biometric features are considered to be a more secure way to protect a device's contents. This is particularly true when the users of a device are engaged in criminal activities and thus have a heightened concern about securing the contents of a device.

e.   As discussed in this affidavit, based on my training and experience I believe that one or more digital devices will be found during the search. The passcode or password that would unlock the device(s) subject to search under this warrant is not known to law enforcement. Thus, law enforcement personnel may not otherwise be able to access the data contained within the device(s), making the use of biometric features necessary to the execution of the search authorized by this warrant.

f.  I also know from my training and experience, as well as from information found in publicly available materials including those published by device manufacturers, that biometric features will not unlock a device in some circumstances even if such features are enabled. This can occur when a device has been restarted, inactive, or has not been unlocked for a certain period of time. For example, Apple devices cannot be unlocked using Touch ID when (1) more than 48 hours has elapsed since the device was last unlocked or (2) when the device has not been unlocked using a fingerprint for 4 hours and the passcode or password has not been entered in the last 156 hours. Biometric features from other brands carry similar restrictions. Thus, in the event law enforcement personnel encounter a locked device equipped with biometric features, the opportunity to unlock the device through a biometric feature may exist for only a short time.

g.  In my training and experience, the person who is in possession of a device or has the device among his or her belongings at the time the device is found is likely a user of the device. However, in my training and experience, that person may not be the only user of the device whose physical characteristics are among those that will unlock the device via biometric features, and it is also possible that the person in whose possession the device is found is not actually a user of that device at all. Furthermore, in my training and experience, I know that in some cases it may not be possible to know with certainty who is the user of a given device, such as if the device is found in a common area of a premises without any identifying information on the exterior of the device. Thus, it will likely be necessary for law enforcement to have the ability to require any individual, who is found at the Subject Premises and reasonably believed by law enforcement to be a user

of the device, to unlock the device using biometric features in the same manner as discussed above.

h. Due to the foregoing, if law enforcement personnel encounter a device that is subject to search and seizure pursuant to this warrant and may be unlocked using one of the aforementioned biometric features, the warrant I am applying for would permit law enforcement personnel to (1) press or swipe the fingers (including thumbs) of any individual, who is found at the Subject Premises and reasonably believed by law enforcement to be a user of the device, to the fingerprint scanner of the device; (2) hold the device in front of the face of those same individuals and activate the facial recognition feature, for the purpose of attempting to unlock the device in order to search its contents as authorized by this warrant.

i. This warrant shall authorize law enforcement officers to physically manipulate and inspect any digital devices seized pursuant to this warrant. This inspection shall include, but is not limited to: photographs, videos, text messages, voice messages, financial application data, GPS location history, social media applications and the photos, videos, and messages therein. This shall include reviewing the contents on the phone, connecting it to the internet in order to retrieve additional data of evidentiary value associated with the device and it's associated social media accounts. Additionally, this warrant shall authorize law enforcement to conduct a forensic download of any of the devices seized pursuant to this warrant.

## CONCLUSION

61. Based on the foregoing, I believe that there is probable cause to believe that evidence of violations of 18 U.S.C. §1962(c) and (d) (Racketeer Influenced and Corrupt Organizations Act and

conspiracy to do the same), 18 U.S.C. § 922 (q)(3)(a) Discharging a Firearm in a School Zone and 18 U.S.C. § 922(k) Possession of a Firearm with a Removed, Obliterated, or Altered Serial Number will be located at the Subject Premises and on the person of Luis Angel Ruiz.

62. Luis Angel Ruiz has an active federal arrest warrant for the crimes of 18 U.S.C. § 922 (q)(3)(a) Discharging a Firearm in a School Zone and 18 U.S.C. § 922(k) Possession of a Firearm with a Removed, Obliterated, or Altered Serial Number related to this ongoing investigation, and the issuance of this search warrant will help to safely take him into custody.

63. The request for the authorization to execute this search warrant at any time, day or night, is made based upon a finding of good cause showing it will enhance the safety of the officers executing the search warrant, will improve the integrity of the evidence at the subject premises, and will increase the effectiveness of an operation involving multiple, sequential, gang-related search warrants.

Respectfully submitted,

Benjamin Berling
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me this
14 day of January 2026.

Damian L. Martinez
United States Magistrate Judge